THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN V. SKURKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-22-496-R |
| | ) | |
| WILLIAM DANIEL, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants' Motion to Dismiss (Doc. No. 11), Plaintiff's Response (Doc. No. 12) and Defendants' Reply (Doc. No. 13). Upon consideration of the parties' submissions, the Court finds as follows.

Plaintiff filed this action alleging claims under the Racketeer-Influenced and Corrupt Organization (RICO) Act and Oklahoma law. Defendants contend that Plaintiff has failed to state a RICO claim, and because the RICO claims form the basis for this Court's jurisdiction over his state law claims, that the Court should dismiss the RICO claim and decline to exercise jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(c).

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the Complaint. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Although Rule 8's pleading standard "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, a complaint does

not suffice "if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). It follows, then, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. So the Court will "disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

According to the Complaint Plaintiff Skurkey and Defendant Daniel were registered financial advisors who worked together for many years. In 2007 they associated and along with one other person formed Summit Partners, LLC. Defendant Daniel served as manager. Both men became registered agents of a broker-dealer, H.Beck, Inc., which permitted them to place trades through the broker-dealer that paid commissions on investments. Daniel, as supervisor, was responsible for communicating with H.Beck and submitting paperwork regarding commissions, including who should be paid and in what percentage. While members of Summit Partners, LLC, Plaintiff and Defendant Daniel generally split commissions equally, but for family and friends or long-time clients the commission might be paid entirely to one agent. Certain commissions were paid multiple times and over an extended period.

In 2016 the two agents ended their association, Skurkey taking some of Summit's clients, while others continued to work with Daniel. They continued to split commissions on some business placed before October 6, 2016 that paid out after that date but had no

agreement to split commissions thereafter. In March 2017, a former client of Summit Partners utilized Plaintiff Skurkey to place a large investment. Despite having severed their professional relationship, in April 2017, Daniel accessed the information via H.Beck's software and learned of Plaintiff's large commission. Daniel, represented by Quigley, filed suit in May 2017, to obtain a portion of the commission. Skurkey counter-claimed, alleging fraud, conversion, and unjust enrichment based on Daniel's actions regarding commissions during their tenure at Summit Partners. Skurkey alleged that Daniel mis-coded trades intentionally, thereby depriving Skurkey of commissions. The parties filed competing motions for summary judgment; Daniel's claims against Skurkey were dismissed, Skurkey's counterclaims proceeded to trial. Following a February 2020 trial Skurkey was awarded several hundred thousand dollars in damages.

The District Court of Oklahoma County entered judgment in favor of Skurkey on February 18, 2020 on the fraud claim for $386,120. On February 21, 2020, the state court entered an order requiring Daniel to appear and answer regarding assets and an injunction prohibiting the transfer or disposition of property. Specifically, the court ordered that he not "conceal transfer, sell, mortgage, alienate, encumber or make any other disposition" of his property, not exempt by law, without order of the court. Plaintiff alleges that Defendant Daniel later transferred certain assets to Defendant Quigley, his attorney, to avoid Skurkey's collection efforts.

On March 3, 2020, Plaintiff issued a garnishment summons to Quail Creek Bank, which as of March 2, 2020, held $33,088.68 for Mr. Daniel. Plaintiff alleges that prior to the attempt at garnishment that account was primarily used by Mr. Daniel to pay personal

and household expenses. On March 3, 2020, after certain bills had been paid, a cashier's check payable to Quigley was issued on the account for $31,593.90, leaving $.01 in the account.[1] Additionally, Plaintiff asserts that Defendant Daniel, who was to receive $90,000.00 paid quarterly in $10,000 installments from Retirement LLC pursuant to an April 3, 2017 sale of assets contract, purported to assign that interest to Quigley. Skurkey was informed of the alleged assignment after his attorney issued a garnishment to Retirement LLC on March 5, 2020.[2] Defendant Daniels, via Quigley, sent a letter to Retirement LLC, dated March 9, 2020 along with a typed "general assignment" dated January 14, 2020, indicating that Daniel had assigned his interest in the remaining money to Quigley. Retirement LLC responded to the garnishment by indicating it held no property that belonged to Daniel in light of his assignment.[3]

The state court conducted a hearing on assets on June 5, 2020. Daniel, represented by Quigley, gave testimony. Defendant Quigley objected when Daniel was asked if he had transferred anything of value other than money to his attorney. As a result, Plaintiff's counsel made inquiry into the assignment sent to Retirement, LLC. Daniel testified that he believed he first saw the assignment in early January 2020, that he signed it on January 14, 2020, and that it was mailed to Retirement LLC that same month, that is, prior to the injunction. Plaintiff requested production of versions and drafts of the assignment,

---

[1] On March 18 2020, Quigley paid $10,000 of this money to Defendant Daniel's wife. Quigley testified that this money was refunded to the Daniels so they could pay tuition.

[2] Five days after the garnishment was issued Quigley, on behalf of Daniel, filed a claim for exemption asserting that the funds were exempt from garnishment, marking a box designated as "personal wages exemption because of undue hardship."

[3] Prior to submitting its response Retirement LLC provided Plaintiff's counsel with a copy of the assignment and a letter received from Quigley.

4

believing it to have been backdated. The metadata associated with the assignment revealed that it was created on February 24, 2020 and modified on February 26, 2020. Daniel thereafter attempted to correct his testimony, writing that he signed a handwritten assignment prepared on January 14, 2020, which subsequently went missing and was replaced by a typewritten copy.

Retirement LLC interpled the proceeds of the April 2017 sales contract. Skurkey filed an application for contempt against Defendant Daniel and his counsel. In response to the contempt applications all three Defendants, including Anne Thomas, who served as legal assistant to Defendant Quigley, submitted affidavits regarding the creation and execution of the assignment. Plaintiff contends the affidavits contain falsehoods designed to support their position that the assignment predated the injunction. Thereafter Plaintiff subpoenaed Defendant Daniel's cell phone records and subpoenaed all three Defendants for their communications regarding the assignment. Plaintiff sought not only the content of communications but also the cell site location information or gps information for Daniel's phone. Plaintiff alleges that thereafter in various court filings and in a hearing Defendants Daniel and Quigley represented that the assignment was first discussed orally in December 2019. Plaintiff surmises this version of the story was to avoid issues with cell site location information, which he believes would reveal that Daniel was not at Quigley's office on January 14, 2020, when the assignment was allegedly executed. Plaintiff asserts that the assignment was not signed until March 9, 2022.

Plaintiff asserts that the above actions were undertaken to prevent him from collecting the judgment issued by the state court and further that Defendants engaged in

both wire and mail fraud. The Complaint identifies by date, participants, and brief description a number of alleged instances of such fraud spanning from February 20, 2020 to January 5, 2021, although the Complaint does not specifically identify the contents of any of the communications. Premised on the alleged wire and mail fraud Plaintiff filed this action alleging that Defendants violated the Racketeering and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1962(c) and § 1962(d). They also seek relief under Oklahoma law. Defendants seek dismissal of Plaintiff's RICO claims, arguing that Plaintiff has failed to state a claim for relief.

Count I of the Complaint alleges violation of 18 U.S.C. § 1962(c), which prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." "RICO provides a private right of action in federal court for individuals injured in their business or property through fraudulent conduct." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) (quoting *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1274 (10th Cir. 2014)). To plead a valid RICO claim, a plaintiff must plausibly allege that a defendant "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (citing 18 U.S.C. § 1962(c)). An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" consists of the criminal offenses

listed in 18 U.S.C. § 1961(1), and a "pattern" requires at least two racketeering acts committed within ten years of each other. 18 U.S.C. § 1961(5).

Defendants first argue that Plaintiff has not sufficiently alleged an enterprise. Plaintiff argues he has asserted two separate enterprises, the first consisting of Daniel, Quigley and Thomas, an association in fact of individuals. Alternatively, Plaintiff argues that Daniel is the enterprise, and Defendants Thomas and Quigley are the persons responsible under RICO. Defendants argue that identifying an attorney and paralegal who are providing a client legal services "finds almost no support in the law." Thereafter Defendants address a number of cases wherein courts concluded that generally a law firm or lawyer providing legal services on behalf of a client is an agent of the client and therefore not an entity separate and distinct from the enterprise. None of the cases is binding authority. In response, Plaintiff cites to a number of cases wherein law firms or attorneys were considered persons and part of an association-in-fact enterprise. Again, none of the authorities cited is binding. The Court, having reviewed the cases, finds those cited by Plaintiff more persuasive and in greater alignment with Plaintiff's allegations here.

In *Bocciolone v. Solowksy*, No. 08-20200, 2009 WL 936667 (S.D. Fla. Apr. 6, 2009), an attorney acting on behalf of a client was not shielded from RICO liability. The attorney allegedly made oral and written misrepresentations, improperly accepted a wire transfer into the firm's trust account and transferred money out of the account for his own benefit. The court, quoting *Handeen v. Lemaire*, 112 F.3d 1339, 1349 (8th Cir.1997)[4],

---

[4] In *Handeen*, in a scheme to discharge an underlying judgment in bankruptcy, among other acts the law firm defendant conspired with other defendants to cover up that the defendant had relocated and taken a higher paying job by mailing checks to his parents for submission to the bankruptcy trustee, ensuring the postmark was local.

noted that "an attorney, who in the course of representation, 'crosses the line between traditional rendition of legal services and active participation in directing the enterprise' is not shielded from his RICO liability." *Id.* at * 4.

In *The Cadle Co. v Flangan*, No. CIV. 301CV531, 2006 WL 860063 (D. Conn. Mar. 31, 2006), lawyers advised a client in an attempt to avoid collection efforts. Following trial the attorneys sought judgment as a matter of law, arguing that holding them liable for their client's acts would be dangerous precedent for the legal community. The court rejected the motion, concluding "[t]he lawyers here were called to answer for their own conduct—conduct that included wrongfully advising a client that he was free to disregard a federal injunction and turnover order, and knowingly filing false documents with the court in an attempt to frustrate collection. In the court's view, this conduct far exceeded the rendering of legal advice and constituted participation in fraudulent conduct in violation of RICO." *Id.* (citing *Handeen*).

Finally, in *Kruse v. Repp*, --- F.Supp.3d ---, 2020 WL 1317479 (S.D. Iowa Mar. 20, 2022), the plaintiffs filed a lawsuit against attorneys and bankers who allegedly worked with the tortfeasor to frustrate collection efforts of a multi-million-dollar personal injury judgment. The court denied the attorneys' motion to dismiss, concluding that the attorneys could be part of an association-in-fact enterprise.[5]

Here, the allegations, which the Court must accept as true, sufficiently support the claim that Defendants Quigley and Thomas went beyond the offering of traditional legal

---

[5] In the Reply Defendants attempt to distinguish the cases upon which Plaintiff relies, generally focusing on the underlying factual nature of the claim that resulted in the judgment sought to be avoided. From the Court's perspective that issue is not relevant, rather it is the efforts of counsel to shield assets from collection via alleged fraud.

advice and worked together to transfer assets in violation of an injunction entered by the state court. Further, when confronted with the issue, they allegedly created fraudulent documents to backdate the first transfer, Daniel's interest in Retirement, LLC, to before the entry of the state court judgment against him. The Court finds the cases upon which Defendants rely distinguishable with regard to whether an attorney can be held liable under RICO.[6]

Defendants next argue the Complaint fails to allege a "pattern of racketeering." A "pattern" requires at least two predicate acts. 18 U.S.C. § 1961(5). Predicate acts must be violations of certain statutes, 18 U.S.C. § 1961(1), here alleged to be federal mail fraud and wire fraud statutes. Additionally, a Plaintiff must allege facts from which the Court can conclude the existence of a pattern, that is that the "predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989) (emphasis original). The Supreme Court has explained that there are two elements to finding a pattern for RICO purposes: "continuity plus relationship." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n. 14 (1985). The Tenth Circuit explained, "[t]he relationship test is not a cumbersome one for a RICO plaintiff." *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1555 (10th Cir. 1992) (internal quotation marks omitted). Plaintiff has alleged that the predicate acts have the same purpose—to prevent Mr. Skurkey from recovering on his judgment, the

---

[6] Plaintiff asserts the potential existence of two enterprises, one comprised of the Defendants working in conjunction with one other and the other comprised solely of Defendant Daniel. The Court need not address this issue, having rejected Defendant's argument that Defendants Quigley and Thomas were Defendant Daniel's agents and therefore could not be part of an association in fact.

9

same participants—Daniel, Quigley, and Thomas, and the same victim—Skurkey. Accordingly, the Complaint satisfies the relationship test. *See id.* at 1556. The Court must therefore consider whether the Complaint alleges facts in support of continuity, the more difficult branch of the test. *Id.*

> No universal standard precisely defining continuity exists because it ultimately "depends on the specific facts of each case." *H.J. Inc.*, 492 U.S. at 241–42, 109 S.Ct. 2893. Continuity can be either closed or open ended. *Id.* at 241, 109 S.Ct. 2893. Closed-ended continuity is a closed period of repeated racketeering conduct, while open-ended continuity consists of racketeering conduct that threatens future repetition. *Id.* Plaintiffs can establish open-ended continuity by showing that the racketeering acts involved implicit or explicit threats of repetition, that they formed the operations of an association that exists for criminal purposes, or that they were the defendants' regular way of conducting a legitimate enterprise. *Id.* at 242–43, 109 S.Ct. 2893.

*Johnson v. Heath*, --- F.4d ---, 2022 WL 17971709, *4 (10th Cir. 2022).

Plaintiff argues the Complaint alleges facts to support both open- and closed-ended continuity.

> [C]losed-ended continuity consists of a closed period of repeated, related racketeering acts that do not necessarily threaten future repetition. *See H.J. Inc.*, 492 U.S. at 241–42, 109 S.Ct. 2893. Because RICO targets long-term racketeering conduct, closed-ended continuity requires a series of related racketeering acts over a "substantial period of time." *Id.* at 242, 109 S.Ct. 2893. We thus consider two factors when determining the existence of closed-ended continuity—the duration of the related predicate acts and the extensiveness of the racketeering scheme. *United States v. Smith*, 413 F.3d 1253, 1271–72 (10th Cir. 2005) (citing *Resol. Tr. Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993)), *abrogated on other grounds by Boyle v. United States*, 556 U.S. 938, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009).

*Id.* Although Plaintiff alleges the predicate acts were committed over a period of more than one year, which can be considered a substantial amount of time for purposes of finding a closed period, the Complaint fails to allege facts to support extensiveness. *See id.* (duration

alone may not establish closed-ended continuity). In evaluating whether the Plaintiff has pled sufficient facts to support the extensiveness prong the Court considers "'the number of victims, the number of racketeering acts, the variety of racketeering acts, whether the injuries were distinct, the complexity and size of the scheme, and the nature or character of the enterprise." *Resol. Trust Corp. v. Stone,* 998 F.2d 1534, 1543, 1544 and n. 9 (citations omitted). No factor is required or dispositive; the factors merely guide [the court] in seeking "a natural and commonsense result." *Id*. at 1544 (internal quotation marks and citation omitted).

Here, Plaintiff alleges a single victim, himself. The Complaint alleges both mail and wire fraud but the chart allegedly identifying predicate acts is limited to acts of wire fraud, although the Complaint references letters sent in furtherance of the scheme. The alleged injuries here are not distinct but rather limited to the alleged failure to pay the underlying judgment and the incurrence of attorney's fees in the collection efforts. The alleged scheme described is not large nor complex and Plaintiff does not allege this is the manner in which an enterprise ordinarily conducts its business.[7] As noted by the court in *Sil-FLO, Inc v. SFHC, Inc*, 917 F.2d 1507, 15157 (10th Cir. 1990), "[w]hile the plaintiffs may have alleged a closed-ended series of predicate acts, they constituted a single scheme to accomplish 'one

---

[7] In evaluating complexity the Tenth Circuit considers, among other factors, the "number of perpetrators involved, the extent of the planning required to perform the scheme, the extent of the management required to run the scheme, the sophistication of products involved in running the scheme, and the amount of money involved." *Johnson*, --- F.4th at ----, 2022 WL 17971709 at *5. The entire scheme here was allegedly perpetuated by three persons, there are no allegations of extensive planning, and the entire amount of money involved is not substantial in light of the large commissions at issue in the underlying case.

11

discrete goal,' directed at one individual with no potential to extend to other persons or entities.")(quoting *Phelps v. Wichita Eagle*-Beacon, 886 F.2d 1222, 1274 (10th Cir. 1989).

The same holds true if the Court considers whether Plaintiff has alleged continuity under an open-ended theory because Plaintiff has not alleged facts that show a clear threat of future criminal conduct related to past criminal conduct. *H.J. Inc.*, 492 U.S. at 242.

> Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity. In *Weizmann Institute of Science v. Neschis, . . .* several beneficiaries of an estate asserted RICO violations against the attorney for the estate and a fiduciary of the estate. The plaintiffs alleged that the defendants had committed several acts of mail fraud spanning a seven-year period. Although the court noted that the duration of the alleged scheme supported a finding of close-ended continuity, it ultimately concluded that the scheme was too "discrete and limited" to establish any pattern of continuity because it involved only "four predicate acts of mail fraud, committed by one participant ... against a limited number of victims ... in furtherance of a single fraudulent scheme (to gain control of [the testator's] assets)."

*Lefkowitz v. Bank of New York*, No. 01 CIV. 6252, 2003 WL 22480049, at *8 (S.D.N.Y. Oct. 31, 2003), *aff'd in part, rev'd in part and remanded,* 528 F.3d 102 (2d Cir. 2007). As noted, the Complaint here alleges a single victim; there are no facts alleged that indicate either alleged enterprise has the potential to expand to other persons or to entities. Although Plaintiff argues the goal has yet to be completed and may not come to fruition, regardless, the Court finds he has failed to allege sufficient facts to support a finding of a future threat. Applying the factors identified by the Tenth Circuit to the allegations in this case leads to the "natural and commonsense result" the Circuit mandates, and the Court finds the

Complaint is subject to dismissal for failing to allege the type of activity that RICO was enacted to address. Plaintiff's RICO claims are therefore subject to dismissal.[8]

Defendant seeks dismissal of Plaintiff's RICO conspiracy claim. 18 U.S.C. §§ 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d). *Tal v. Hogan,* 453 F.3d 1244, 1270 (W.D.Okla.2006). *See United States v. Hampton,* 786 F.2d 977, 978 (10th Cir.1986) ("The object of a RICO conspiracy must be to violate a substantive RICO provision."). Because Plaintiff has no viable claim under § 1962(c), the subsection (d) conspiracy claim fails as a matter of law. *See Condict v. Condict,* 826 F.2d 923, 927 (10th Cir.1987) ("[A]ny claim under § 1962(d) based on a conspiracy to violate the provisions of 18 U.S.C. § 1962(a), (b), or (c) must necessarily fall if the substantive claims are themselves deficient.").

Having concluded that Plaintiff has failed to state a federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, Counts III through V of the Complaint. *See* 28 U.S.C. § 1367(c). Accordingly, those claims are hereby dismissed without prejudice.

For the reasons set forth herein, Defendants' Motion to Dismiss is hereby GRANTED.

---

[8] The Court need not address Defendant's remaining arguments in light of the conclusion that Plaintiff's Complaint fails to sufficiently allege facts indicative of a "pattern of racketeering activity." However, the Court notes that Defendant's argument that Plaintiff has not pled reliance is not well taken in light of *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S.Ct. 2131 (2008), wherein the Court concluded that a RICO claim predicated on mail fraud need not show that the plaintiff relied on defendant's alleged misrepresentations.

**IT IS SO ORDERED** this 4th day of January 2023.

*/s/ David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE